Roslyn O. BEAUFORD, Joseph C. Palmento, Maria Valle, Joseph Decesare, Jr., and Elsie Decesare, individually and on Behalf of others similarly situated, Plaintiffs,

v.

Harry B. HELMSLEY, Supervisory Management Corp., Avenue of America Realty Corp., Benenson Capital Co., Sanford G. Bluestein, Felice Earley, Estate Associates, Joan Konner, Peter L. Malkin, John J. Reynolds, Inc., Saul S. Silverman, William C. Warren, William C. Breed III, Ralph W. Felsten, Lillian M. Gelfman, Robert W. Gelfman, Donald L. Jonas, Jeffrey D. Klein, Norman R. Klein, Alvin S. Lane, Fred Linden, Gertrude G. Malkin, Peter L. Malkin, Claire W. Morse, Lester S. Morse, Jr., Richard P. Morse, Ivan Shapiro, Alvin Silverman, Harold L. Strudler, Brown, Harris, Stevens, Inc., Meyer, Strong and Jones, P.C., Marcel P. Aillery, J.G. White Engineering Corp., Defendants.

No. 86 Civ. 7115 (RWS).

United States District Court,
S.D. New York.

Dec. 12, 1986.

Edward S. Kanbar, Esq., New York City, for plaintiffs.

Parcher, Arisohn & Hayes, P.C., New York City, for defendants; L. Peter Parcher, Steven M. Hayes, John Carney, of counsel.

SWEET, District Judge.

This is a class action brought by the five named plaintiffs, individually and on behalf of others similarly situated, for damages and injunctive relief in connection with alleged fraud and misrepresentation in the conversion of a large residential complex in the Bronx known as the Parkchester. By order to show cause, plaintiffs have requested an order restraining defendants from engaging in any further sales or sales efforts of any condominium apartments in Parkchester. Certain defendants have cross-moved for an order dismissing the complaint. For the reasons discussed below, the motion to dismiss is granted, thereby rendering the request for a preliminary injunction moot.

**Prior Proceedings**

The complaint in this action, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the federal securities laws, and various state laws, was filed on September 16, 1986. That same day, plaintiffs sought by order to show cause an order restraining the defendants from engaging in any further sales or sales efforts of any condominium apartments in Parkchester. The order to show cause was scheduled for argument on September 19, and subsequently adjourned by consent of all parties to October 3, 1986. Several of the defendants subsequently made a motion, returnable on October 24, to dismiss the complaint. In response to defendants' moving papers, plaintiffs amended the complaint by repleading the RICO claim and dropping the claims under the securities laws. The two motions were argued on October 24, at which time the court granted the parties permission to submit additional papers. The last of those papers were received by the court on November 13, 1986.

**The Amended Complaint**

According to the amended complaint, the Parkchester is an apartment complex in the Bronx owned by Parkchester Apartments Co. ("Parkchester Co.") and consisting of 51 buildings and 12,271 apartments. The complex is divided into the North, South, East, and West Quadrants. The North Parkchester condominium plan was declared effective in approximately 1973 as a non-eviction plan. At the present time, 20% of the apartments have been sold. The condominium plan for conversion of the South, East, and West Quadrants (collectively the "South Condominium") was accepted by the State of New York on or about June, 1984. At present, 60% of the South Condominium apartments have been sold.

The plaintiffs in this action reside in the Parkchester apartment complex. Joseph C. Palmento ("Palmento") has purchased an apartment in the complex's South Condominium and the remaining four plaintiffs, two of which are in the South Condominium and two in the North, are tenants who did not elect to purchase their apartments pursuant to the offering plan.

Defendants fall into several categories. According to the complaint, the first group consists of the individual partners of Parkchester Co., which is the owner of

Parkchester and the sponsor of the conversion of the property condominium ownership. Defendant Brown, Harris, Stevens, Inc. is the selling agent for Parkchester Co. The remaining defendants are engineering firms that provided engineering reports and studies as part of the conversion of Parkchester to condominium ownership.

The amended complaint alleges a variety of claims sounding in fraud and arising out of the offering plans of the North and South Condominiums. According to the amended complaint, the defendants made willful misrepresentations in the offering plan in omitting information that the entire plumbing and electrical systems had to be replaced, that there were serious structural defects in some of the buildings, and that the insulation on the hot water pipes was "asbestos and impregnated." In addition, the offering plan allegedly misstates the identities of the principals of Parkchester Co. and does not disclose that plumbing repairs are made without cost to the owners of the condominium units. As a result of these misrepresentations, Palmento was allegedly induced to purchase an apartment in the South Condominium. The other four named defendants have allegedly been injured directly by being induced not to buy their apartments, or indirectly by being forced out of the buying market by high prices made possible by the fraud on other buyers.

**The Motion To Dismiss**

The asserted basis for jurisdiction in this action is the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Although plaintiffs, in response to defendants' motion to dismiss, have amended their complaint to replead the RICO claim, the allegations are still deficient and the complaint is dismissed for lack of jurisdiction.

■ The elements of a RICO claim are the existence of an enterprise engaged in or affecting interstate commerce, a pattern of racketeering activity engaged in by the defendants, a nexus between the pattern of racketeering and the enterprise, and an injury to the plaintiff in his business or property by reason of the violation of the RICO statute. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). To adequately allege a pattern of racketeering activity, a plaintiff must allege both that the defendants engaged in "racketeering activity" and that the commission of those acts comprised a "pattern." "Racketeering activity" is the violation of one or more enumerated state and federal offenses, including mail and securities fraud. 18 U.S.C. § 1961(1).

■ Plaintiffs apparently rely on allegations of mail fraud under 18 U.S.C. § 1343 and securities fraud under Section 10(b) of the Securities Act of 1934 to make out the requisite pattern of racketeering activity under RICO. The allegations of securities fraud are deficient as a matter of law. To state a claim under Section 10(b), a plaintiff must allege fraud "in connection with the purchase or sale of a security." 15 U.S.C. § 78j(b) (1982). Apparently recognizing that the sale of condominium units on these facts does not constitute the sale of a security for purposes of the securities laws, *see Bender v. Continental Towers Ltd. Partnership,* 632 F.Supp. 497, 500–01 (S.D.N.Y.1986), plaintiffs have alleged that certain "investment contracts" were offered to "various persons and parties, including offers to defendants Malkin, Felstein and Silverman, wherein sales of units were made in contemplation of appreciation solely through the efforts of defendants." [1] Although the ambiguous "investment contract," presumably the "partnership" interest alleged in ¶ 12 of the complaint, may be a security within the meaning of the securities laws, *see Bender, supra,* 632 F.Supp. at 500, the allegations of fraud have nothing to do with the purchase or sale of this investment contract.

Plaintiffs' sole allegation is that certain defendants, including those defendants

---

**1.** The sale of condominium units, even when "made in contemplation of appreciation solely through the efforts of defendants," as the complaint alleges, does not constitute a sale of securities. *See Bender, supra,* 632 F.Supp. 497. Even though the sponsor of an offering plan might influence the value of the units through its marketing efforts and its own buying and

who were offered the "investment contracts," manipulated the prices of apartments. The defendants' purchase of an "investment contract" was in no way induced by any fraud on the part of other defendants. Indeed, the very document that discloses these defendants' ownership of certain "investment contracts" also contains the only fraudulent misrepresentations alleged. Furthermore, purchases of "investment contracts" by some defendants from other defendants could hardly be said to have been induced by manipulations by *all* defendants of prices of apartments. The most that can be said is that defendants bought "investment contracts" in order to make money out of manipulating the prices of apartments. The only connection that the "purchase or sale" of the "investment contract" has with the fraud is to put the defendants in a position to make money from the subsequent fraud. The sale or purchase of the "investment contract" is independent of any scheme to manipulate the price of apartments.

■ The allegations of mail fraud are also deficient. Even assuming that plaintiffs have adequately alleged fraud, they have failed to adequately allege a "pattern" of racketeering, despite their conclusory description of the fraud as "several distinct schemes to defraud" both potential buyers and partners and investors. All alleged misrepresentations appear in one document, the offering plan for condominium conversion. Even under the most liberal reading of "pattern," the defrauding of potential buyers of condominium units by individually mailing them copies of a single fraudulent document and failing to remedy the fraud in subsequent amendments does not constitute a pattern of racketeering activity. This court's opinion in *Anisfeld v. Cantor Fitzgerald & Co., Inc.*, 631 F.Supp. 1461, Fed.Sec.L.Rep. (CCH) ¶ 92,713 (S.D.N.Y.1986) is directly on point. In that case, the fraud complained of arose out of an allegedly false and misleading Confidential Investment Memorandum sent to nine plaintiff investors in connection with the offering of certain partnership

selling strategies, a "piece of real estate, such as a condominium, has an inherent worth, a worth

interests. This court concluded that the "fact that there may have been numerous misrepresentations in connection with this single transaction" did not create a pattern. *Id.* 631 F.Supp. 1461, Fed.Sec.L.Rep. (CCH) ¶ 93,470; *see also Crummere v. Brown,* No. 85 Civ. 1376 (S.D.N.Y. April 3, 1986) [Available on WESTLAW, DCTU database]; *Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198, 1200 (S.D.N.Y.1986); *Utz v. Correa,* 631 F.Supp. 592 (S.D.N.Y.1986). The RICO claims are therefore dismissed. In the absence of a valid federal claim, this court declines to exercise jurisdiction over the pendent state claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, the complaint is dismissed.

Submit judgment on notice.

IT IS SO ORDERED.

not solely dependent on the efforts of the promoter." *Bender, supra,* 632 F.Supp. at 501.