Roslyn O. BEAUFORD, Joseph C. Palmento, Maria Valle, Joseph Decesare, Jr., and Elsie Decesare, individually and on behalf of others similarly situated, Plaintiffs–Appellants,

v.

Harry B. HELMSLEY, Supervisory Management Corp., Avenue of America Realty Corp., Benenson Capital Co., Sanford G. Bluestein, Felice Earley, Estate Associates, Joan Konner, John J. Reynolds, Inc., Saul S. Silverman, William C. Warren, William C. Breed III, Ralph W. Felsten, Lillian M. Gelfman, Robert W. Gelfman, Donald L. Jonas, Jeffrey D. Klein, Norman R. Klein, Alvin S. Lane, Fred Linden, Gertrude G. Malkin, Peter L. Malkin, Claire W. Morse, Lester S. Morse, Jr., Richard P. Morse, Ivan Shapiro, Alvin Silverman, Harold L. Strudler, Brown, Harris, Stevens, Inc., Marcel P. Aillery, J.G. White Engineering Corp., Defendants–Appellees.

No. 40, Docket 87–7216.

United States Court of Appeals,
Second Circuit.

Argued June 13, 1988.

Decided Jan. 13, 1989.

Edward S. Kanbar, New York City, for plaintiffs-appellants.

Steven M. Hayes, New York City (Mark S. Arisohn, Edward M. Chikofsky, Stanley Neustadter, Parcher Arisohn & Hayes, P.C., New York City, on the brief), for defendants-appellees.

Gerald B. Lefcourt, P.C. (Gerald B. Lefcourt, Joshua L. Dratel, New York City, Walter P. Loughlin, Newark, N.J., of counsel), for amicus curiae Marvin Kaplan.

Before OAKES, Chief Judge,* and LUMBARD, FEINBERG,* MESKILL,

* Judge Oakes succeeded Judge Feinberg as Chief Judge while this matter was sub judice.

NEWMAN, KEARSE, CARDAMONE, PIERCE, WINTER, PRATT, MINER, ALTIMARI and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs Roslyn O. Beauford, *et al.*, appeal from a final judgment of the United States District Court for the Southern District of New York, Robert W. Sweet, *Judge,* dismissing their amended complaint which sought damages from defendants for mailings of allegedly fraudulent materials relating to the sale of condominium apartments, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986). The district court dismissed the amended complaint on the ground, *inter alia,* that it failed to state a claim upon which relief can be granted under RICO because it failed to allege a sufficient "pattern of racketeering activity," *see id.* § 1961(5). A unanimous panel of this Court affirmed the decision of the district court, but suggested that the appeal be "reheard en banc to clarify Second Circuit law." *Beauford v. Helmsley,* 843 F.2d 103, 110 (1988). On rehearing, we conclude for the reasons stated below and in *United States v. Indelicato,* 865 F.2d 1370 (*"Indelicato"*), heard *en banc* in tandem with the present case and published simultaneously herewith, that the amended complaint sufficiently alleged a pattern of racketeering activity. We therefore vacate the panel decision and the judgment of the district court and remand to the district court for further proceedings.

## I. BACKGROUND

The present lawsuit, styled a class action, focuses on the conversion of a large Bronx, New York apartment complex known as "Parkchester" into condominiums. Parkchester comprises 51 buildings containing a total of 12,271 apartments; it is divided into the North, East, South, and West quadrants. It is principally the conversion of the East, West, and South quadrants ("EWS quadrants") that is at issue here.

Plaintiffs are one tenant of Parkchester who purchased his apartment and four tenants who did not. Defendants are the partners in Parkchester Apartments Co., which is the real estate partnership sponsoring the conversion, the sponsor's sales agent (all of the foregoing collectively referred to as the "sponsoring defendants"), and an engineering firm and an individual engineer (collectively the "engineering defendants") who supplied reports and studies as part of the conversion.

The amended complaint alleged that in connection with the offering plan for the conversion of the EWS quadrants, comprising 8,286 apartments, defendants made a number of material misrepresentations including the concealment of (a) serious structural defects in the buildings, (b) the presence of asbestos in their insulation, and (c) the need to replace their plumbing and electrical systems. The alleged means of concealment included material misstatements by the engineering defendants, failures to disclose by the sponsoring defendants, and absorption by the sponsoring defendants of certain repair costs in order to set forth artificially low maintenance levels for the apartments. Plaintiffs alleged that had they received accurate and complete information, their decisions whether or not to purchase condominiums would have been affected, and that defendants' frauds artificially inflated the purchase prices of the apartments.

In addition to alleging that defendants' conduct constituted common-law fraud, the amended complaint alleged that the frauds had been committed through the mailing of the conversion offering plans and plan amendments to tenants of all 8,286 apartments and to other potential buyers, in violation of 18 U.S.C. § 1341 (1982); that both the partnership itself and the defendants as a group constituted enterprises within the meaning of RICO, 18 U.S.C. § 1961(4); and that plaintiffs were entitled to recover under civil RICO, 18 U.S.C. § 1964(c).

In an opinion reported at 650 F.Supp. 548 (1986), the district court granted defendants' motion to dismiss the amended complaint for failure to state a federal claim on which relief could be granted because it failed to allege a pattern of racketeering activity. With respect to the RICO claim, the court stated as follows:

> Even assuming that plaintiffs have adequately alleged fraud, they have failed to adequately allege a "pattern" of racketeering, despite their conclusory description of the fraud as "several distinct schemes to defraud" both potential buyers and partners and investors. All alleged misrepresentations appear in one document, the offering plan for condominium conversion. Even under the most liberal reading of "pattern," the defrauding of potential buyers of condominium units by individually mailing them copies of a single fraudulent document and failing to remedy the fraud in subsequent amendments does not constitute a pattern of racketeering activity.

*Id.* at 551. Having also dismissed plaintiffs' only other alleged basis for federal-question jurisdiction, and there being no claim of diversity of citizenship, the court also declined to entertain plaintiffs' pendent state-law claims.

The court denied plaintiffs' motion for leave to file a second amended complaint that would have added allegations that defendants had, *inter alia*, denied claims by tenants based on water damage; misallocated expenses from one quadrant to another; destroyed documents; lowered the levels of services in categories such as hot water, electricity, elevators, painting, landscaping, and central mall maintenance; failed to disclose purchases of supplies through a related company; and engaged in discriminatory enforcement of regulations against tenants. The court was unpersuaded that the proposed new allegations would cure the amended complaint's failure to allege a pattern of racketeering activity. Accordingly, judgment was entered dismissing the action.

On appeal, a panel of this Court affirmed the judgment of dismissal. We noted that the pattern of this circuit's RICO precedents was somewhat confusing, in that it had imposed a continuity requirement on the enterprise element and had

> f[ound] insufficient evidence of continuity in a single criminal episode regardless of how many fraudulent acts it entails. In other words, a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern.

843 F.2d at 110. We concluded that given our precedents, the present case was properly dismissed for lack of a RICO enterprise, stating that "a single alleged scheme" to defraud tenants and other prospective buyers is not sufficient to permit a plaintiff to take advantage of RICO where the scheme, though "widespread," is "discrete," and, though "continuing," is "finite." *Id.*

The panel recommended that the appeal be reheard *en banc* to clarify Second Circuit law, and this rehearing was joined with an *en banc* rehearing of an appeal from a judgment of conviction in *Indelicato*, which raises a similar issue with regard to the RICO requirement of a "pattern" of racketeering activity. For the reasons stated below and in *Indelicato*, we conclude that the amended complaint in the present case met the "pattern" requirement.

## II. DISCUSSION

RICO § 1962(c) makes it unlawful, in pertinent part,

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c). The terms "enterprise," "person," "racketeering activity," and "pattern of racketeering activity" are defined in 18 U.S.C. § 1961, in pertinent part, as follows:

> (1) "racketeering activity" means ...
> (B) any act which is indictable under any of the following provisions of [18 U.S.C.]:

... section 1341 (relating to mail fraud)....

....

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; ....

*Id.* §§ 1961(1), (3), (4), and (5). A private right of action is provided for a person injured in his business or property by reason of a RICO violation. *Id.* § 1964(c).

### A. *Our Prior Decisions Interpreting "Pattern" and "Enterprise"*

In our accompanying opinion in *Indelicato,* we have explored at some length the course of this circuit's decisions, especially those in the aftermath of the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("*Sedima*"), interpreting the RICO concepts of "pattern" and "enterprise." As set forth in greater detail in Parts II.B. and C. of *Indelicato,* we held in *United States v. Ianniello,* 808 F.2d 184, 190–92 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), that a RICO pattern of racketeering activity may be established simply by proof of two acts of racketeering activity. While recognizing that an inquiry must be made as to "relatedness" and "continuity," we concluded that these concepts did not affect the existence of pattern but rather were "best addressed in the context of the concept of 'enterprise.'" *Id.* at 191.

Thereafter, in a series of civil RICO cases, we adhered to *Ianniello* 's interpretation of pattern and further developed our notions of continuity with respect to the element of enterprise. In each of the civil cases discussed at greater length in Part II.C. of *Indelicato,* we found that the allegation of two or more acts of racketeering activity satisfied the pattern requirement, but we found insufficient continuity of enterprise. In *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), we found that a bank was not properly alleged to be a continuing RICO enterprise because its allegedly fraudulent scheme "had but one straight-forward, short-lived goal." *Id.* at 51. In *Furman v. Cirrito,* 828 F.2d 898, 902–03 (2d Cir.1987), we held that the continuing enterprise element was not shown because the effect of the allegedly fraudulent acts was the dissolution of the partnership alleged to have been the enterprise. In *Albany Insurance Co. v. Esses,* 831 F.2d 41 (2d Cir.1987), we found that a company and its proprietor were not a continuing enterprise because their fraud "had an 'obvious terminating goal' " of inducing an insurance company to pay a false claim. *Id.* at 44 (quoting *Ianniello,* 808 F.2d at 192). In *Creative Bath Products, Inc. v. Connecticut General Life Insurance Co.,* 837 F.2d 561 (2d Cir.1988), we held that an insurance company was not a sufficiently continuing RICO enterprise where it had "made three fraudulent representations in pursuit of a single short-lived goal" of selling four related insurance policies. *Id.* at 564. In *United States v. Benevento,* 836 F.2d 60 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988), we summarized our standards concisely: "So long as the defendants commit at least two predicate acts, they have met the pattern requirement and, so long as the enterprise is long and elaborate enough to be considered continuing, the enterprise requirement is satisfied." *Id.* at 72. Rarely in a civil RICO case was an enterprise found to be long enough and elaborate enough.

### B. *Our Present Interpretations and the Present Complaint*

■ As discussed in Part II.E. of *Indelicato,* our current review of the language

and legislative history of RICO has led us to the conclusion, *inter alia,* that proof of two acts of racketeering activity without more does not suffice to establish a RICO pattern. Since Congress's goal in fashioning its definition of "pattern of racketeering activity" was to exclude from the reach of RICO criminal acts that were merely "isolated" or "sporadic," we must determine whether two or more acts of racketeering activity have sufficient interrelationship and whether there is sufficient continuity or threat of continuity to constitute such a pattern. Accordingly, our analysis of relatedness and continuity has shifted from the enterprise element to the pattern element.

Within this framework, there is no question that the amended complaint in the present case adequately pleaded the RICO enterprise element. It alleged that there were two such enterprises: the partnership that sponsored the conversion, and all of the defendants in association with one another for the purpose of accomplishing the apartment sales. Each is within the statutory definition of enterprise. The more interesting question is whether the amended complaint adequately alleged a pattern of racketeering activity.

Our *Indelicato* analysis has persuaded us that a RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and that acts that are not widely separated in time or space may nonetheless properly be viewed as separate acts of racketeering activity for purposes of establishing a RICO pattern. Thus, in *Indelicato,* we found that three acts of murder could constitute a RICO pattern even though there was proof of but one scheme, and even though the three murders, carried out virtually simultaneously, could not be viewed as separable episodes or transactions. This analysis is equally applicable to the present case, for since a RICO violation is an element to be proven in a civil RICO action, the substantive standards as to what must be proven in a criminal RICO prosecution also govern civil RICO actions. *See Sedima,* 473 U.S. at

489, 105 S.Ct. at 3281 ("Section 1962 renders certain conduct 'unlawful'; § 1963 and § 1964 impose consequences, criminal and civil, for 'violations' of § 1962. We should not lightly infer that Congress intended the term to have wholly different meanings in neighboring subsections."). Applying these standards here, we can no longer say, as we once did, that there is "insufficient evidence of continuity," or of pattern, "in a single criminal episode regardless of how many fraudulent acts it entails." 843 F.2d at 110. We impose no multiple episode requirement, and we conclude that for a determination of whether there is a RICO pattern, each individual racketeering act should be separately counted.

In the present case, we conclude also that a RICO pattern may be adequately pleaded without an allegation that the scheme pursuant to which the racketeering acts were performed is an ongoing scheme having no demonstrable ending point. We reach this conclusion because nothing in the statute or the legislative history reveals an intent to require such an open-ended scheme. What is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic. In *Indelicato,* we found the threat of continuity inherent in the criminal nature of the enterprise at whose behest the three related murders were committed. Were the same type of enterprise alleged here, we would have no difficulty in finding a sufficient allegation of the threat of continuity needed to show a pattern. When, however, there is no indication that the enterprise whose affairs are said to be conducted through racketeering acts is associated with organized crime, the nature of the enterprise does not of itself suggest that racketeering acts will continue, and proof of continuity or the threat of continuity of racketeering activity must thus be found in some factor other than the enterprise itself. We conclude that the amended complaint alleged sufficient other factors with respect to continuity to avoid dismissal for failure to allege a RICO pattern.

The amended complaint alleged that the conversion of the apartments in the EWS quadrants in 1984 was commenced by means of an offering plan that was mailed to the tenants of 8,286 apartments as well as other potential buyers. The offering plan was alleged to have contained a number of material misrepresentations and omissions of material facts, concealing, *inter alia,* that the plumbing and electrical systems in all of the buildings needed to be replaced and that there were serious structural defects in some of the buildings. It was also alleged that since 1984 there had been several amendments to the offering plan which perpetuated the misrepresentations in the original offering plan, and that these amendments also were mailed to the tenants and potential buyers.

In assessing the sufficiency of these allegations to show a pattern, we note first that § 1961(1)(B) defines racketeering activity, in pertinent part, as "any act which is indictable under ... section 1341 (relating to mail fraud)," and that each act of fraudulent mailing is separately indictable, *see Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916) ("each putting of a letter into the postoffice a separate offence" under predecessor of § 1341); *United States v. Eskow,* 422 F.2d 1060, 1064 (2d Cir.) (dictum), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970). Second, there can be no question that the thousands of alleged mail frauds here had the necessary interrelationship to be considered a pattern. All of the mailings were made to groups of persons related by either their tenancy in Parkchester apartments or their potential interest in purchasing such apartments. All of the frauds allegedly had the same goal, *i.e.,* inflating the profits to be made by the defendants in the sale of the Parkchester apartments. *See Indelicato,* 865 F.2d at 1383 ("the simultaneous commission of like acts for similar purposes against a number of victims" may constitute a pattern).

Further, assuming that one could ever characterize more than 8,000 mailings as "isolated" or "sporadic" as a matter of law, which we doubt Congress would have envisioned, we interpret the amended complaint as containing sufficient other allegations to reveal continuity or the threat of continuity. Thus, that pleading suggested that further amendments to the 1984 offering plan were likely since some 40% of the EWS quadrant apartments remained unsold; as precedent, it alleged that although the conversion of the North quadrant was commenced in 1973, some 20% of the apartments in that quadrant remained unsold and the North quadrant offering plan had been repeatedly updated by amendments, most recently in 1986.

In sum, read with ordinary charity, the amended complaint alleged that on each of several occasions defendants had mailed fraudulent documents to thousands of persons and that there was reason to believe that similarly fraudulent mailings would be made over an additional period of years. These allegations sufficed to set forth acts that cannot be deemed, as a matter of law, isolated or sporadic. We conclude that the relatedness and continuity factors have been adequately revealed in the pleading and that the amended complaint did not fail to satisfy the pattern requirement.

We hasten to add, however, that we do not regard any of the complaints filed or proffered by the plaintiffs in this case as well pleaded. While the complaints contained detail as to the alleged shortcomings in the defendants' performance as landlords and sellers, we doubt that they met the requirements of Fed.R.Civ.P. 9(b), which requires that fraud be pleaded with particularity. Accordingly, we suggest that the district court allow plaintiffs an additional opportunity to file a new pleading, preferably one that complies with all of the Federal Rules of Civil Procedure, including Rule 9(b) and Rule 8(a) (complaint should contain a "short and plain" statement of the claim). We of course express no view as to whether plaintiffs' allegations of a RICO pattern, which we think sufficient at the pleading stage, will be sufficiently supportable to withstand a mo-

tion for summary judgment or whether the evidence will suffice to persuade a jury that such a pattern is in fact established.

We recognize that our reframing today of the enterprise and pattern requirements, and particularly our rejection of any requirements that there be multiple schemes or long-term goals or temporal separation of racketeering acts, will open the door to far more civil RICO cases than have heretofore survived our scrutiny. This more liberal approach is, however, required by the statute.

> RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, see *United States v. Turkette*, 452 U.S. 576, 586–587 [101 S.Ct. 2524, 2530, 69 L.Ed.2d 246] (1981), but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," Pub.L. 91–452, § 904(a), 84 Stat. 947. The statute's "remedial purposes" are nowhere more evident than in the provision of a private action for those injured by racketeering activity.

*Sedima*, 473 U.S. at 497–98, 105 S.Ct. at 3285–86. And notwithstanding our own views that the RICO provisions cast too wide a net with respect to the civil actions that may be brought, *see also id.* at 499, 105 S.Ct. at 3286 ("[i]t is true that private civil actions under the statute are being brought almost solely against [respected and legitimate] defendants, rather than against the archetypal, intimidating mobster"), it is clear that Congress was aware that some persons having no association with organized crime would be ensnared by RICO. Thus, with respect to the list of criminal acts that could constitute predicate racketeering activities under RICO, Senator McClellan, sponsor of S. 30, 91st Cong., 1st Sess., 115 Cong.Rec. 827 (1969) (bill containing RICO), noted that a committee of the Association of the Bar of the City of New York had "complain[ed] that the list is too inclusive, since it includes offenses which often are committed by persons not engaged in organized crime." 116 Cong. Rec. 18940 (1970). The Senator responded that it was simply not possible to draw the statute in such a way that it would be sure to reach the organized crime activities that were targeted yet not reach others:

> The Senate report does not claim ... that the listed offenses are committed primarily by members of organized crime, only that those offenses are characteristic of organized crime. The listed offenses lend themselves to organized commercial exploitation, unlike some other offenses such as rape, and experience has shown they are commonly committed by participants in organized crime. That is all the title IX list of offenses purports to be, that is all the Senate report claims it to be, and that is all it should be.
>
> Members of La Cosa Nostra and smaller organized crime groups are sufficiently resourceful and enterprising that one constantly is surprised by the variety of offenses that they commit. *It is impossible to draw an effective statute which reaches most of the commercial activities of organized crime, yet does not include offenses commonly committed by persons outside organized crime as well.*

*Id.* (emphasis added). Thus, Congress made the legislative judgment, as it was entitled to do and which must be given deference, that in order to reach members of organized crime, it was worth reaching other offenders as well.

## CONCLUSION

The decision of the panel is vacated; the judgment of the district court is vacated, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.

OAKES, Circuit Judge (dissenting) (with whom Judges LUMBARD and FEINBERG join):

I welcome the clarification of Second Circuit RICO law provided by today's two

opinions: "Continuity" and "relatedness" are aspects of a "pattern of racketeering activity," and not of the "enterprise." However, I must still dissent in this case, for the actions alleged here constitute a single scheme that is discrete and finite. There is no continuity, or the threat of continuity; hence, there is no *pattern* of racketeering activity.

I continue to agree with the district court that since "[a]ll alleged misrepresentations appear in one document, the offering plan for condominium conversion," 650 F.Supp. at 551, there can be no "pattern." It does not matter how many people received that document or how many amendments were mailed without remedying the original fraud. The alleged scheme has a discrete, finite nature even though it involved a very large condominium conversion lasting over a long period of time.

Two additional factors distinguish this case from *United States v. Indelicato.* The first is that the enterprises here, the sponsoring partnership and the individuals associating to sell the apartments, are not illegitimate enterprises such as the enterprise there, the Commission of La Cosa Nostra. This does not exempt the enterprises here from RICO liability, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985), but it does affect the manner of proving the pattern of racketeering activity. In *Indelicato*, evidence concerning the nature of the enterprise also proved the existence of a pattern by showing relatedness and continuity. *See Indelicato* at 1385 (Oakes, J., concurring). Here, however, that sort of evidence is unavailable.

The second factor distinguishing this case from *Indelicato* is the predicate acts involved—here alleged mail frauds, there murders to achieve Commission goals. As pointed out by Judge Cudahy:

Mail fraud and wire fraud are perhaps unique among the various sorts of "racketeering activity" possible under RICO in that the existence of a multiplicity of predicate acts (here, the mailings) may

be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a "pattern" of racketeering activity.

*Lipin Enters Inc. v. Lee*, 803 F.2d 322, 325 (7th Cir.1986) (concurring opinion); *see also United States v. Horak*, 833 F.2d 1235, 1240 (7th Cir.1987) (recognizing same). In this case, the mailing of copies of a single document to many people, followed by amendments that did not correct the alleged misstatements, may yield many counts of mail fraud, but it does not suffice to show continuity.

To me, today's ruling pushes civil RICO to its logical extreme, a regrettable development. Any real estate conversion involving the mailing of an offering plan with one misrepresentation to apartment house tenants, coupled with the mailing of an amendment to the plan that fails to remedy the fraud, is now subject to civil RICO charges. This decision invites plaintiffs into federal court and arms them with a civil RICO that, for all practical purposes, is unlimited. In many cases, reliance on tort or contract law, or any resort to the state courts, will become unnecessary. The majority has declined to accept the Supreme Court's invitation to "develop a meaningful concept of 'pattern,'" *Sedima*, 473 U.S. at 500, 105 S.Ct. at 3287, and would instead, in its own words, "open the door to far more civil RICO cases than have heretofore survived our scrutiny." (Majority opinion at 1393.) Accordingly, I dissent.