**DONNKENNY, INC., Plaintiff,**

v.

**Murray NADLER, Cummings & Carroll, P.C., H.B. Carroll, Glenn O. Thornhill, Galax Apparel Corporation, and DK Investors, Inc., Defendants.**

**DK INVESTORS, INC. and Murray Nadler, Third–Party Plaintiffs,**

v.

**OPPENHEIMER & CO. and Oppenheimer & Co., Inc., Third–Party Defendants.**

No. 81 CIV. 6075 (SWK).

United States District Court, S.D. New York.

May 8, 1989.

Lord, Day & Lord, Barrett Smith, New York City by Gerald A. Novack, for Donnkenny, Inc.

Kaye, Scholer, Fierman, Hays & Handler, New York City by Fred A. Freund, Ira S. Sacks, Michael A. Lynn, for Murray Nadler.

Cole & Deitz, New York City by Robert Kushner, for Cummings & Carroll, P.C. and H.B. Carroll.

Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City by Mark C. Zauderer, for DK Investors, Inc.

Weil, Gotschal & Manges, New York City by Nancy Barton, for Oppenheimer & Co. and Oppenheimer & Co., Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Presently before this Court is the summary judgment motion of defendants Murray Nadler ("Nadler"), DK Investors, Inc. ("DKI"), Cummings & Carroll, P.C. and H.B. Carroll ("the accountants"). These defendants are referred to collectively as "the New York defendants". The New York defendants alternatively seek judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The New York defendants also seek to have this Court set a hearing to determine the amount of fees and expenses that should be awarded to Nadler under § 145(c) of the Delaware General Corporation law.[1] In addition to being a party to the New York defendants' papers, defendant DKI has submitted supplemental papers of its own. This case has a long procedural history.

## BACKGROUND

The facts in this case are fully outlined in a prior opinion by Judge Pollack, *Donnkenny, Inc. v. Nadler*, 544 F.Supp. 166 (1982), familiarity with which is presumed. Donnkenny, Inc. ("Donnkenny") is a maker of women's clothing. Oppenheimer & Co. ("Oppenheimer") purchased the assets of Donnkenny in 1978. At the time of the purchase, Glenn O. Thornhill ("Thornhill") and Nadler were directors of Donnkenny. After the purchase, they signed employment agreements with Oppenheimer and remained to manage the day-to-day business of Donnkenny. Donnkenny had been a publicly held company, the name of which was changed after the purchase to DK Investors ("DKI"). DKI currently operates as a closed-end investment concern. As the surviving corporate shell of Donnkenny prior to the sale to Oppenheimer, DKI is referred to as "Old Donnkenny". Oppenheimer assumed the name of Donnkenny and held it as a private company.

In 1981, Nadler resigned as president of Donnkenny. Subsequently, the new president, Al Paris, fired Thornhill, the company treasurer, for alleged insubordination, negligence and breach of fiduciary duties. This precipitated a series of lawsuits, discussed below.

### Procedural Background

The following procedural history is based on the parties' local rule 3(g) statements.

---

1. Delaware General Corporation Law § 145(c) provides for indemnification of an officer or director who successfully defends claims brought by the Corporation. Since the Court is denying defendants' motion for summary judgment in part, it would be premature for the Court to address Nadler's claim under § 145(c) at this time. Nadler's indemnification claim based on the by-laws is similarly untimely.

On September 12, 1981, Thornhill commenced an action against Donnkenny and Al Paris in the state circuit court for Montgomery County, Virginia, alleging, *inter alia*, breach of contract and wrongful termination. On October 1, 1981, Donnkenny commenced the present lawsuit in the United States District Court for the Southern District of New York, alleging racketeering activity, fraud and other violations of common law duties. On October 2, 1981, Donnkenny removed the Virginia state court action to the United States District Court for the Western District of Virginia.

On August 3, 1982, this Court stayed the present action as to Thornhill, concluding that the claims against Thornhill should have been filed in Virginia as compulsory counterclaims. On August 24, 1982, Donnkenny answered the complaint in the Virginia federal court and brought in the New York defendants as counterclaim-defendants. The counterclaims asserted by Donnkenny in the Virginia action were substantively identical to the claims it asserted against the New York defendants in the present action.

On January 20, 1983, the Virginia court stayed the counterclaims asserted by Donnkenny against the New York defendants pending resolution of the claims between Thornhill and Donnkenny. On April 5, 1983, this Court stayed this action as against the New York defendants pending resolution of the claims between Thornhill and Donnkenny in Virginia.

On October 11, 1985, the jury in the Virginia action returned a verdict in favor of Thornhill, awarding him $280,000 in damages on his breach of contract claim and $1,000,000 in damages on his wrongful termination claim. Donnkenny's counterclaims against Thornhill not only involved claims for relief by Donnkenny, but also constituted defenses to the alleged breach of Thornhill's employment contract. Since the jury apparently rejected these defenses, defendants argue that plaintiff is es-

topped from raising Thornhill's alleged wrongful conduct in this action.

On August 11, 1986, the Virginia court ordered that Donnkenny's counterclaims against the New York defendants be transferred to this Court pursuant to 28 U.S.C. § 1404(a). On July 14, 1987, the United States Court of Appeals for the Fourth Circuit affirmed, in relevant part, the judgment entered by the Virginia court against Donnkenny. On August 15, 1988, Donnkenny and defendants Thornhill and Galax entered into a stipulation, agreeing that all of Donnkenny's claims against those two defendants in this action should be dismissed with prejudice.[2]

## DISCUSSION

Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for

---

**2.** The third claim against Thornhill and Galax for violation of 15 U.S.C. § 13(c), the tenth claim against Thornhill for breach of employment agreement and the twelfth claim against

Thornhill for a judgment relieving Donnkenny of its obligations to Thornhill, are dismissed with prejudice per the August 15, 1988 stipulation.

trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

Collateral Estoppel

Collateral estoppel "is the branch of *res judicata* doctrine that prevents a party from relitigating an issue of fact or law that has been decided in an earlier suit." *Wilder v. Thomas*, 854 F.2d 605, 616 (2d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989). This Court accords preclusive effect in this action to factual determinations in the Virginia action that were actually litigated and necessary to the outcome of the Virginia litigation. *See N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983).

The New York defendants argue that Donnkenny's claims are barred by principles of collateral estoppel because they are derivative of, and dependent upon, Donnkenny's assertions against Thornhill in the Virginia action, which were rejected by the jury. In the Virginia wrongful termination action, Donnkenny specifically alleged and argued that it was justified in firing Thornhill for breaching his fiduciary duty to Donnkenny. As the Virginia jury found for Thornhill, thus necessarily denying Donnkenny's defense, the defendants now contend that it has been finally decided that Thornhill did not breach any fiduciary duties to Donnkenny.

Donnkenny, however, argues that its present claims are independent of its claims in Virginia. It asserts that the jury in the Virginia action only necessarily determined that Thornhill had disclosed his conflict of

interest to "Donnkenny" which under the jury instructions could have meant disclosure merely to one of the Donnkenny Board members not affiliated with Oppenheimer.

1. The Thornhill–Related Claims

■ The Thornhill-related RICO claims allege that Nadler and the other New York defendants either participated in Thornhill's alleged wrongful conduct, or at least, failed to disclose Thornhill's wrongful conduct. In regard to the alleged failure to disclose, plaintiff claims that Nadler concealed from Oppenheimer, before and after the sale of Donnkenny, that a) Thornhill was the owner of competing apparel manufacturing plants; b) Thornhill's competing business was guaranteed Donnkenny work by the agreement of Nadler and Thornhill; c) Nadler authorized Thornhill to divert Donnkenny work to Thornhill's plants while Donnkenny plants operated at reduced capacity and suffered significant layoffs; and d) as a result of the above, Donnkenny incurred millions of dollars in unnecessary manufacturing expenses that contributed to its financial decline.

Throughout the long history of this case, Donnkenny has maintained and alleged repeatedly that Thornhill and Nadler were conspirators in a scheme to defraud Donnkenny. Such assertion is essential to the RICO claims regarding Thornhill. The Virginia action, however, has conclusively established that Thornhill did not act wrongfully. That determination logically forecloses the possibility that Nadler and the other New York defendants could have acted wrongfully by either collaborating with Thornhill or failing to disclose his actions. Moreover, Donnkenny's assertion that the jury in the Virginia action could have exonerated Thornhill if he disclosed his actions to Nadler only—and to no one else at Donnkenny—is meritless in light of Donnkenny's allegations that Thornhill and Nadler were conspirators. This Court does not accept plaintiff's speculative inference that the Virginia jury rejected Donnkenny's allegation of wrongful conduct by Thornhill because Thornhill disclosed the

alleged scheme to an alleged co-conspirator, Nadler.

Clearly, the jury first had to necessarily consider and reject Donnkenny's asserted defenses—the same alleged Thornhill-related breaches asserted here—before awarding damages to Thornhill. As Donnkenny's attorney asserted by affidavit in a prior motion, "[t]he *very same facts* that give rise to a claim for affirmative relief in this action constitute a *complete* defense to Mr. Thornhill's breach of contract claim in the Virginia Federal Action." Affidavit of Gerald A. Novack, dated June 25, 1982, at ¶ 6, attached as Exhibit V to Defendant's Memorandum in Support of Summary Judgment. The Virginia jury rejected this purported "complete defense". On review, the Fourth Circuit explained that the only possible basis for granting judgment notwithstanding the verdict on the breach of contract claim would have been Donnkenny's breach of fiduciary duty defense. *Thornhill v. Donnkenny*, 823 F.2d 782, 786 (4th Cir.1987). The Fourth Circuit considered this argument and concluded "[w]e are satisfied that the evidence supporting Donnkenny, Inc.'s affirmative defense was not so overwhelming that we cannot uphold the jury's rejection of that defense." *Id.*

The New York defendants' liability on the Thornhill-related RICO claim was dependent upon Donnkenny's success in the Virginia action. The issue of Thornhill's alleged wrongful conduct has been actually litigated and necessarily decided in Thornhill's favor. Consequently, the New York defendants have properly asserted defensive collateral estoppel in the present action. *See* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4416 (1981) (general statement on basis for collateral estoppel).

Since Donnkenny is precluded from raising the issue of Thornhill's alleged wrongful conduct, and since that issue is the gravamen of Donnkenny's Thornhill-related RICO claims, summary judgment against Donnkenny is appropriate. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2735 (1983). Donnkenny's first RICO claim is therefore dismissed with prejudice.[3] Those portions of the second RICO claim not relating to the expense account claims described below are dismissed with prejudice as well.[4]

### 2. The Expense Account Claims

■ This category of RICO claims relates to alleged wrongful conduct by Nadler concerning his expense account and the expense account of Les Saul, a longtime Nadler friend and fellow officer of Donnkenny, spanning a period after the takeover in November 1978 until August 1981. Donnkenny alleges that Nadler defrauded it by submitting fraudulent expense account claims himself and by approving the personal expenses of Les Saul. It is further alleged that the accountants— H.B. Carroll and Cummings & Carroll— concealed this activity from Oppenheimer and its representatives on the board of Donnkenny. The expense account issue was not litigated in the Virginia action, and even though it may have been raised tangentially to Thornhill's liability, it was not necessary to the judgment in Virginia because it was not raised by Donnkenny as a defense. *See* Plaintiff's Memorandum in Opposition at 7; Defendant's Reply Memorandum in Support at 10. Collateral estoppel is therefore inappropriate. *See* 18 C. Wright, A. Miller & E. Cooper, Federal

---

**3.** This count asserts a RICO claim for conduct relating to the sale of assets transaction, as set forth in ¶¶ 11–14.

**4.** Defendants also move for summary judgment on all of the RICO claims, on behalf of defendant Nadler, asserting that Donnkenny cannot show that Nadler acted with the requisite criminal intent under RICO. Defendants Memorandum of Law at 34–39. Defendants argue that: (1) the predicate acts alleged in Donnkenny's first RICO claim are communications by Donnk-

enny's legal and accounting advisers, which Nadler had no involvement in and (2) the predicate acts alleged in the second claim represent nothing more than routine business communications which were deemed to have been proper in the Virginia action. We need not address these arguments since the RICO claims they pertain to have heretofore been dismissed on the basis of collateral estoppel. This argument was not made in regard to the expense account claims.

Practice and Procedure: Jurisdiction § 4416 (1981).

As a second, alternative argument, defendants contend that they are entitled to summary judgment on the expense account RICO claims. According to this argument, Donnkenny has failed to meet its Rule 56 burden to come forward with evidence that Nadler's charging of personal expenses to his employer breached his consulting or employment agreement, or that it breached his fiduciary duty to Donnkenny. Defendants rely in part on a term in Nadler's contract that provides that he was entitled to the same manner of reimbursements after the buyout as before. Defendants therefore argue that no evidence has been submitted on whether the manner and amount of reimbursements changed after the buyout. While this argument goes to whether Nadler breached the reimbursement clause of his employment contract, it begs the more central inquiry into whether Nadler breached his fiduciary duty to Donnkenny by fraudulently charging considerable personal expenses to Donnkenny.

Donnkenny argues that it has identified approximately ninety-one thousand dollars in questionable expenses, and that Nadler breached his fiduciary duty by using his expense account to reimburse considerable personal expenses of himself and others. The movant has not at this stage done more than conclusorily state that there is no evidence of a breach of fiduciary duty. While Donnkenny has not proffered much evidence of this alleged expense account abuse, it has cited enough evidentiary support that Nadler submitted personal expenses for reimbursement and approved payment of the personal expenses of others to create a genuine issues of material fact, thus defeating summary judgment. *See*

Falon Affidavit, attached as Exhibit H to Donnkenny's Memorandum in Opposition at 9–13, 15–19, and 21–29.[5]

### 3. DKI's Liability

■ Plaintiff alleges that DKI is liable for the acts of its agents—Nadler and Carroll—and as a principal for false representations in connection with Oppenheimer's 1978 buy-out of its assets. DKI has separately moved for summary judgment on the grounds that, as the remaining corporate shell of Old Donnkenny, it cannot be held liable for: 1) defendants' wrongdoing prior to, and in connection with, the sale of Old Donnkenny's assets; and 2) defendants' wrongdoing after the sale of Old Donnkenny's assets.

DKI's first argument is rendered moot by our dismissal of the Thornhill-related claims. DKI's second argument goes directly to the remaining expense account claims, which are based on acts that occurred after the buy-out. DKI argues that it did not guarantee the competence or integrity of Nadler and other management personnel in the Agreement of Sale. Furthermore, DKI was not a party to the management and employment contracts drawn up between the management and New Donnkenny after the sale of Old Donnkenny's assets. DKI had no control or responsibility with respect to the management of Donnkenny after the buy-out, and therefore, there is no ground on which to hold it liable for the alleged post-buy-out wrongful conduct of management.

Plaintiff can pursue its expense account claims against the individual and corporate defendants alleged to have been responsible for the wrongful acts alleged. DKI cannot be held liable for acts occurring after the buy-out, absent contractual guar-

---

**5.** Defendants argue that *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that the federal mail fraud statute does not protect the intangible interest in honest and impartial government, should be extended to private sector cases involving individuals with "clear fiduciary duties to their employers...." Defendants, however, merely offer, as authority for this broad proposition, language in Justice Steven's *McNally* dissent suggesting that the opinion of the Court might be contrary to the acceptance of an intangible rights theory in private sector cases. This language does not support defendants' argument that *McNally* applies to an action based on an alleged breach of fiduciary duty, brought by a corporation against a former officer. Even if *McNally* were to be applied in such cases, however, plaintiff has alleged deprivation of a tangible right in regard to the remaining expense account claims.

antees regarding management's competence, performance or integrity. Summary judgment is granted in favor of defendant DKI.

### 4. The State Law Claims

 If the federal claims in an action based on federal question jurisdiction are dismissed before trial, the pendent state law claims should be dismissed. *Hughes v. Patrolmen's Benev. Ass'n of City of N.Y.*, 850 F.2d 876, 881 (2d Cir.) (pendent claims dismissed after finding, during course of trial, that federal claims are "discernibly meritless"), *cert. denied*, —— U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *see generally United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966). Therefore, state law claims pendent only to the Thornhill-related RICO claims should be dismissed.

The test for determining whether a state claim is pendent to an asserted federal claim is "whether the federal and state claims in the case 'derive from a common nucleus of operative fact' and are such that [Donnkenny] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers, supra*, 383 U.S. at 725, 86 S.Ct. at 1138). The seventh claim is pendent only to the Thornhill-related RICO claims, as it alleges that Nadler and Thornhill engaged in the systematic and unlawful diversion of corporate opportunities from Donnkenny to Galax. The seventh claim is therefore dismissed for lack of subject-matter jurisdiction. Since the other claims are not solely pendent to the Thornhill-related RICO claims and are also pendent to the remaining expense account RICO claim, they should not now be dismissed.[6]

#### Judgment on the Pleadings for the Remaining Expense Account Claims

The complaint states the expense account claim, which is Donnkenny's only remaining RICO claim, as follows:

During the same period when the assets of Donnkenny were being diverted to Galax, defendant Murray Nadler and others engaged in a practice of defrauding Donnkenny by submitting false and fraudulent claims for substantial amounts of alleged expenses which in fact had no relationship to Donnkenny's business.

Complaint ¶ 28. The New York defendants argue that Donnkenny's claims are deficient in that: 1) they fail to plead a cognizable enterprise with a distinct structure and economic existence separate from the alleged pattern of racketeering activity; and 2) they fail to plead "continuity-plus-relationship".

#### 1. Defendants as "Enterprise" and "Person"

 Donnkenny has clearly pled the existence of an enterprise, an association-in-fact of defendants. The Second Circuit has stated that "we see no reason why a single entity could not be both the RICO 'person' and one of the number of members of the RICO 'enterprise.' The definitions of these terms are intentionally broad." *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *see also Richardson Greenshields Securities v. Mui–Hin Lau*, 693 F.Supp. 1445, 1449 (S.D.N.Y.1988); *Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 275 (S.D.N.Y.1988); *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 438 (E.D.N.Y.1987).

#### 2. The Relatedness and Continuity Requirements

 In a series of civil RICO cases, the Second Circuit focused its analysis of relatedness and continuity on the enterprise element rather than the pattern element of RICO. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987),

---

**6.** Defendants alternatively move to dismiss the common law state claims on the basis of the collateral estoppel effect of the Virginia court's judgment. Both plaintiff and defendants concede that the expense claim issue was not before the jury in Virginia, and thus not actually and necessarily decided. For this reason, the Virginia action cannot collaterally estop plaintiffs from asserting state law claims based on the alleged expense account violations.

*cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (bank not properly alleged to be a continuing RICO enterprise because its allegedly fraudulent scheme had one "straight forward, short-lived goal"); *Albany Insurance Co. v. Esses,* 831 F.2d 41 (2d Cir.1987) (company and proprietor were not a continuing enterprise because their fraud had an obvious terminating goal); *Creative Bath Products, Inc. v. Connecticut General Life,* 837 F.2d 561 (2d Cir.1988) (insurance company not a continuing enterprise where it had made three fraudulent representations in pursuit of a short-lived goal); *United States v. Benevento,* 836 F.2d 60 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988) (enterprise must be long and elaborate enough to be considered continuing in order to satisfy the enterprise requirement).

The Second Circuit recently heard two cases en banc, *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (criminal RICO) and *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989) (civil RICO), and reinterpreted the pattern and enterprise elements of civil and criminal RICO. In *Beauford,* a civil RICO case, the court found:

> [O]ur current review of the language and legislative history of RICO has led us to the conclusion, *inter alia,* that proof of two acts of racketeering activity without more does not suffice to establish a RICO pattern. Since Congress's goal in fashioning its definition of 'pattern of racketeering activity' was to exclude from the reach of RICO criminal acts that were merely 'isolated' or 'sporadic,' we must determine whether two or more acts of racketeering activity have sufficient interrelationship and whether there is sufficient continuity or threat of continuity to constitute such a pattern. *Accordingly, our analysis of relatedness and continuity has shifted from the enterprise element to the pattern element.*

*Beauford, supra,* 865 F.2d at 1390–91 (emphasis added). The Court held that "a RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions." *Id.* at 1391. Furthermore, the Court concluded that "a RICO pattern may be adequately pleaded without an allegation that the scheme pursuant to which the racketeering acts were performed is an ongoing scheme having no demonstrable ending point." *Id.* In the context of civil RICO, when "there is no indication that the enterprise whose affairs are said to be conducted through racketeering acts is associated with organized crime, the nature of the enterprise does not itself suggest that racketeering acts will continue, and proof of continuity or the threat of continuity of racketeering activity must thus be found in some factors other than the enterprise itself." *Id.* Therefore, the relevant inquiry becomes whether the plaintiff has alleged: 1) predicate acts which are sufficiently interrelated to be considered a pattern; and 2) whether the complaint as a whole contains sufficient allegations to reveal continuity or a threat of continuity.

In the present case, the plaintiff has met the above requirements. The predicate acts alleged by the plaintiff are *inter alia,* the submission of fraudulent personal expense claims by Nadler, the approval of Saul's personal expense claims by Nadler and the accountants' concealment of this activity. These acts are sufficiently interrelated to be considered a pattern under *Beauford.* Furthermore, the acts alleged occurred over the course of at least two and one-half years and might have continued in the future had Nadler remained in Donnkenny's employ. Therefore, these allegations also sufficiently allege continuity.

## CONCLUSION

For the foregoing reasons, defendant DKI's motion for summary judgment is granted, the other New York defendants' motion for summary judgment is granted in part and denied in part, and their motion for a judgment on the pleadings pursuant to 12(c) of the Federal Rules of Civil Procedure is denied. Pursuant to a stipulation between Donnkenny, Thornhill and Galax, which this Court has "so ordered", Counts three, ten and twelve are dismissed with prejudice. Pursuant to this opinion, Count

one is dismissed with prejudice, as is Count seven. The other counts survive this motion only in so far as they address the expense account claims.

SO ORDERED.