**BANCO DE PONCE, Plaintiff,**

v.

**Garie NEGRON, et al., Defendants.**

**No. 88 C 415.**

United States District Court,
E.D. New York.

Dec. 28, 1989.

As Amended Feb. 21, 1989.

Lopez & Romero, New York City, for plaintiff.

Garie Negron, Queens, N.Y., pro se.

NICKERSON, District Judge.

Plaintiff brought this action under 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986), the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law. Garie Negron is the only remaining defendant and is appearing *pro se.*

The case was tried to the court without a jury. The court makes the following findings of fact and conclusions of law.

Plaintiff bank claims that defendant Negron engaged in a fraudulent telemarketing scheme. Plaintiff, which has settled with the other defendants, unwittingly advanced some $300,000 to finance the scheme and sustained damages. Defendant obtained from plaintiff a checking account and a Visa/Mastercharge Merchant service account (the account), both for the use of the travel agency operated by defendant under the name A Best Rate Travel (Best Rate). Under the arrangement for a merchant service account, plaintiff allowed defendant to accept credit card slips as payment for goods and services. When

defendant presented the slips to plaintiff it would credit the amount of the charges to defendant's Best Rate checking account.

In fact defendant was in many instances selling phony or misrepresented travel packages by telephone. When the charges on the slips reached plaintiff and it credited the funds to the checking account, defendant withdrew funds from the account. After customers discovered the true terms of the misrepresented travel packages, they often cancelled their purchases, causing chargebacks, or debits, to the checking account.

After noticing an inordinate number of chargebacks to the account and discovering that Best Rate was out of business, plaintiff closed the account. As of July 31, 1987, defendant had deposited a total of $294,873 in credit card slips in the checking account. During 1987 she withdrew about $157,000 from the account and transferred more than $87,000 to her co-defendants in Florida.

Plaintiff received $30,000 in settlement from the other defendants, and credited $7,947.44 of that amount to defendant's remaining debts. When plaintiff closed the checking account, it had a debit balance of $41,606.06. Crediting the rest of the $30,000 to defendant's account would leave the debit balance outstanding at $19,553.50, for which defendant is responsible under New York State law.

■ The question remains whether plaintiff has proven a RICO claim and is entitled to treble damages, costs and attorneys' fees. *See* 18 U.S.C. § 1964(c). Ordinarily this court would not have supposed that plaintiff's acts were sufficiently analogous to those of an organized crime figure as to justify a finding that she has been guilty of a RICO violation. *See Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962 (E.D.N.Y. 1988) and cases cited.

However, the Second Circuit has given that statute such an expansive interpretation, *see Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.1989), *vacated and remanded to Court of Appeals*, —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584, *reasoning aff'd and remanded*, slip op. 87–7216 (2d Cir. 9/15/89), that it appears this court is required to hold that defendant has violated 18 U.S.C. § 1962.

Defendant, or she and her co-defendants, met the definition of an "enterprise." She engaged in activities which affected interstate commerce and participated in the conduct of the enterprise's affairs through a "pattern of racketeering activity," as the Second Circuit has construed 18 U.S.C. § 1961(5). By causing numerous mailings and telephone calls to be made in 1987, defendant violated the mail fraud statute 18 U.S.C. § 1341, as well as the wire fraud statute, 18 U.S.C. § 1343.

Perhaps Congress thought, as the Second Circuit said, "that in order to reach members of organized crime, it was worth reaching others as well," *Beauford, supra,* 865 F.2d at 1393, even an offender so insignificant as defendant. However, if this defendant is held to have committed a RICO violation then it is hard to conceive of many state business fraud cases that are not covered by RICO, and Congress has acted the part of a modern day Pygmalion creating not a beautiful Galatea, but an unexpected and imposing monster inflicting consequences wholly disproportionate to the offenses committed by persons such as defendant.

This court follows what it understands to be the Second Circuit's holding and concludes that defendant is liable for not only $19,553.50, but also for treble damages, attorneys fees and costs.

■■ Plaintiff has submitted a statement of attorney's fees and costs in the amount of $47,160.21. After reviewing the complexity of the issues involved, the court determines the hours expended to be reasonable, but the fee to be slightly excessive. The court considers a fee of $140 per hour for Mr. Lopez and $100 for other counsel to be reasonable. In addition, re-

covery of fees against Negron for work done in preparing the action against the Florida defendants with which plaintiff settled is improper. Thus the court determines a quarter of the fees for the 11/30/87 and the 11/9/87 billing, a third of the 4/30/88 and 3/7/88 billing, and the total of the 10/31/89 and 9/6/89 billing should be attributed to defendant Negron. Total hours worked by Mr. Lopez and the other attorneys are thus 50.86 and 125.33 respectively. At the average rates listed above, $19,653.40 worth of fees are attributable to the case against defendant. In addition, using the same ratios discussed above, plaintiff expended $704.54 in costs. Thus costs and attorney's fees equal $20,-357.94.

Thus defendant is liable for $58,660.50 for treble damages and $20,357.94 for attorney's fees for a total of $79,018.44.

So ordered.