## McCORMACK INTERNATIONAL CORP., Plaintiff,

v.

Satinder VOHRA, Sunil Vohra a/k/a "Sunny" Vohra, Sunil Bhasin a/k/a "Lucky" Bhasin, Walji Raghvani, William Capparelli, the Sarova Group, Empat Enterprises, Inc., M.R.N. & S., Inc., M.D. Contractors (N.Y.) Corp., Service Plus Demolition, Inc., OD & P, Inc., 304 East 42nd Street Corp., Bank of Tokyo Trust Co., Hong Kong Bank, Ltd., and James Capel Bankers, Ltd., Defendants.

No. 91 Civ. 3638 (DNE).

United States District Court, S.D. New York.

July 21, 1994.

Ernest H. Hammer, New York City, for plaintiff McCormack Intern. Corp.

Rosen, Preminger & Bloom, New York City (David S. Preminger, Helen J. Lukievics, of counsel), for defendants Satinder Vohra, Sanjit Vohra, Sunil Bhasin, Walji Raghvani, The Sarova Group, Empat Enterprises, Inc., M.R.N. & S., Inc., and M.D. Contractors (N.Y.) Corp.

Judd Burstein, P.C., New York City, for defendant Service Plus Demolition, Inc.

Jay Goldberg, P.C., New York City, for defendant William Capparelli.

## OPINION & ORDER

EDELSTEIN, District Judge:

This action was brought by plaintiff McCormack International Corp. pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988). Plaintiff's complaint also includes supplemental state law claims to foreclose a lien, impress a trust, and for conversion. Defendants Satinder Vohra, Sunil Vohra,[1] Sunil Bhasin, Walji Raghvani, the Sarova Group, Empat Enterprises, Inc., M.R.N. & S., Inc., and M.D. Contractors (N.Y.) Corp. move to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 9(b) and Rule 12(b)(6), and also move for the imposition of sanctions, pursuant to Rule 11, 28 U.S.C. § 1927, and this Court's inherent power. Defendants Service Plus Demolition,

Inc., and William Capparelli filed a separate motion to dismiss the complaint. These motions were referred to Magistrate Judge Leonard Bernikow for report and recommendation. In his Report and Recommendation, Magistrate Bernikow recommended that the motions to dismiss be granted and that the motion for the imposition of sanctions be denied. In a Supplemental Report and Recommendation,[2] Magistrate Bernikow recommended that leave to amend the complaint be denied. For the reasons discussed below, this Court adopts both the original and the supplemental Report and Recommendation in their entirety.

## BACKGROUND

The following account of the background of this litigation is derived from the complaint, as well as the parties' motion papers. As noted below, defendants[3] dispute many of the facts alleged in the complaint. For the purpose of evaluating defendants' motions to dismiss this action, however, the Court treats the facts alleged in the complaint as true. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

This action arises out of a contract under which plaintiff McCormack International Corp. ("McCormack" or "plaintiff") acted as contractor for the renovation of the Tudor Hotel ("the Hotel"), located in Manhattan. McCormack is a construction contractor that was founded for the purpose of undertaking the Tudor Hotel renovations.

There are several defendants in this case. M.R.N. & S., Inc. ("MRN & S") is the owner of the ground lease of the Tudor Hotel. Em-

---

1. In their moving papers, defendants note that Sunil Vohra's correct name is Sanjit Vohra.

2. The original Report and Recommendation states that during a telephone conference with plaintiff's counsel and counsel for the moving defendants, plaintiff's counsel informed Magistrate Bernikow that the New York County District Attorney's Office was investigating the facts underlying this case, and requested leave to amend the complaint after any indictments had been filed. Magistrate Bernikow's recommendation regarding plaintiff's request for leave to replead, contained in his Supplemental Report and

Recommendation, was accordingly deferred until after an indictment had been filed against William Capparelli in state court.

3. As discussed above, separate motions to dismiss were filed by two groups of defendants. Two defendants, OD & P, Inc. and 304 East 42nd Street Corp., have not filed any motion. In the interest of clarity, the two groups of moving defendants will be referred to collectively in this opinion simply as "defendants," and the arguments in support of their respective motions to dismiss will be addressed collectively as well.

pat Enterprises, Inc. ("Empat") is the manager and operator of the Hotel, as well as the owner of the furniture, fixtures, equipment, and other personalty of the Hotel. The complaint alleges that the Sarova Group is the parent company of MRN & S and Empat. M.D. Contractors (N.Y.) Corporation ("M.D. Contractors") is a general construction contractor controlled by MRN & S and Empat. According to the complaint, Satinder Vohra is the president of the Sarova Group; Sunil (Sanjit) Vohra is the president of MRN & S and Empat, and an officer of the Sarova Group; Sunil Bhasin is the vice-president and secretary of MRN & S and Empat, and an officer of the Sarova Group; and Walji Raghvani is the president of M.D. Contractors. The complaint groups together all of the above defendants save for M.D. Contractors and Raghvani, and refers to these defendants collectively as "the Sarova defendants." Defendants object to this grouping, averring that the Sarova Group is merely an affiliation of independent hotels that use the name "Sarova Group" for marketing purposes only, and that plaintiff's conglomeration of these defendants in the complaint is misleading. For the purpose of reviewing defendants' motions to dismiss, and for clarity, the Court will adopt plaintiff's terminology.

Service Plus Demolition, Inc. ("Service Plus") is engaged in the business of demolition and waste removal. Plaintiff alleges that Service Plus is under the direction and control of defendant William Capparelli ("Capparelli"), whose son Carmine Capparelli is president of the company. OD & P, Inc. ("OD & P") is engaged in the business of general contracting and construction management, and is alleged to be also under the control of Capparelli. The complaint avers that Capparelli is a member of the Bonanno organized crime family who, either directly or through his associates, controls Service Plus and OD & P; the complaint refers to these three defendants collectively as the "Organized Crime Defendants."

Defendants Bank of Tokyo Trust Co., Hong Kong Bank, Ltd., and James Capel Bankers, Ltd. are financial institutions that are either mortgagees of the Tudor Hotel or have a secured interest in the Hotel. These defendants have been dismissed by stipulation and are no longer involved in this action. 304 East 42nd Street Corp. is alleged to be the owner of the real property on which the Tudor Hotel is situated.

In August 1989, defendant MRN & S purchased the net lease for the Tudor Hotel, while defendant Empat purchased the furniture, fixtures, equipment, and personalty of the Hotel. MRN & S then entered into an agreement with Empat whereby Empat was to manage the Hotel. The complaint alleges that, around this time, the Sarova defendants developed plans for an extensive renovation of the Hotel, and negotiated an agreement with plaintiff to have McCormack act as the prime contractor for those renovations. McCormack commenced work on the Hotel in August 1989.

On or around May 9, 1990, McCormack signed a second agreement whereby M.D. Contractors became the general contractor and McCormack became a subcontractor on the renovations; the complaint alleges that this was a mere formality undertaken for "financing purposes" only, and that McCormack remained the real general contractor on the job.

The original budget for the renovations was approximately nineteen million dollars. This subsequently was increased to approximately thirty-five million dollars as a result of requests by the Sarova defendants for additional renovations. Plaintiff avers that McCormack rendered full and timely performance of the renovation work and related services under the terms of the contract.

According to the complaint, the Sarova defendants devised a scheme to replace McCormack as general contractor mid-way through the project and to bring in a substitute that could finish the job at a reduced cost. This scheme was allegedly implemented in two phases. During the first phase, of the series of checks issued over a period of several months by the Sarova defendants to cover installment payments due McCormack under the terms of the contract, six were returned for insufficient funds. The complaint alleges that the Sarova defendants intentionally provided McCormack with "bad checks" in order to induce McCormack to

incur expenses that it would be unable to cover, forcing plaintiff to withdraw from the project.[4] The complaint further alleges that these checks were issued after McCormack had completed the bulk of the renovations, including work that required McCormack's special expertise, such that the Sarova defendants would receive the benefit of this work without having to pay for it.

According to the complaint, when these initial attempts to induce McCormack to withdraw from the project proved unsuccessful, the Sarova defendants enlisted the aid of the Organized Crime Defendants to help force McCormack off the job. The complaint alleges that during this second phase of the Sarova defendants' alleged scheme, defendant Capparelli undertook a pattern of extortionate acts in order to intimidate McCormack employees and ultimately induce McCormack to withdraw from the Tudor Hotel renovations. It should be noted that Service Plus, represented by Capparelli, was originally hired by *plaintiff* to undertake certain demolition work at the Hotel, as well as to assist plaintiff in avoiding "labor troubles." Nonetheless, the complaint alleges, it was the Sarova defendants who subsequently enlisted the aid of Capparelli in furtherance of their alleged conspiracy.

The complaint alleges that in February 1991, after repeated attempts to remove McCormack from the project through the issuance of bad checks, the Sarova defendants conspired with Capparelli to remove plaintiff from the job by means of threats, violence, and extortion and to substitute defendant OD & P as general contractor.[5] According to the complaint, Capparelli had made it known to both plaintiff and the Sarova defendants that he was a member of the Mafia. The Sarova defendants took advantage of Capparelli's particular "skills" to remove plaintiff from the project and invited Capparelli to engineer the substitution of his own company for McCormack.

According to the complaint, Capparelli immediately commenced a campaign of terror. On March 24, 1991 Capparelli met with McCormack's president, Sean McCormack, and warned him that he, his son, and a fellow McCormack employee would be murdered if McCormack did not immediately withdraw as general contractor for the Tudor Hotel renovations. On March 29, 1994, Capparelli allegedly assaulted a McCormack employee at the Hotel and threatened him with death if he did not leave New York. Capparelli returned to the Hotel on April 5, 1994, and assaulted and/or threatened several McCormack employees in an effort to force McCormack off the job through intimidation of its employees. The complaint alleges that the Sarova defendants ignored plaintiff's requests for help in fending off Capparelli's forays, and instead kept Capparelli fully apprised of the financial details of the project.

On April 8, 1991, during separate meetings with Capparelli and defendant Walji Raghvani, president of M.D. Contractors, Sean McCormack learned that the Sarova defendants had agreed with Capparelli that OD & P, under Capparelli's direction, would assume primary management of the Tudor Hotel renovations. Furthermore, McCormack was to be given no money to meet its commitments, and subcontractors were thereafter to be paid through OD & P, not McCormack. On April 12, 1991, plaintiff abandoned the project and undertook no further work on the Tudor Hotel renovations. This action ensued.

## DISCUSSION

Two groups of defendants move, pursuant to Rule 12(b)(6), to dismiss plaintiff's claims. In evaluating a Rule 12(b)(6) motion, the Court looks to the four corners of the complaint and evaluates the legal feasibility of the allegations contained therein. *See Cortec Indus.,* 949 F.2d at 47; *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Ryder Energy Distrib. Corp. v. Merrill*

---

**4.** Defendants aver that all of these checks were subsequently "made good." *See Objections to Report and Recommendation of Magistrate Judge,* at 14. Plaintiff concedes that this is true. *See Plaintiff's Memorandum of Law in Support of*

*Objections to Magistrate's Reports and Recommendations,* at 16 n. 5.

**5.** As discussed above, OD & P was allegedly controlled by defendant Capparelli.

*Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). As the Second Circuit has stated, the Court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In evaluating whether a complaint will withstand a Rule 12(b)(6) motion, the Court must assume the truth of plaintiff's well-pleaded factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). In addition, the Court will read the complaint "generously, and draw all reasonable inferences in favor of the pleader." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *see LaBounty*, 933 F.2d at 123 (allegations in complaint must be "construed favorably to the plaintiff"). The complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of this claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) (same).

■ A motion to dismiss a RICO claim should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir.1992). Each of plaintiff's claims will be evaluated with reference to this standard.

### 1. Mail and Wire Fraud

Count One of the complaint charges that Sarova, Raghvani, and M.D. Contractors vio-lated 18 U.S.C. § 1962(c) by engaging in a pattern of mail and wire fraud. 18 U.S.C. § 1962(c) states that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1961(5) states that " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(1) includes within the definition of "racketeering activity" violations of the mail fraud statute, 18 U.S.C. § 1341 (Supp. IV 1992), and the wire fraud statute, 18 U.S.C. § 1343 (Supp. IV 1992).

Plaintiff argues that the six bad checks issued to McCormack allegedly for the purpose of putting plaintiff in a difficult financial position and ultimately forcing plaintiff to withdraw from the Tudor Hotel renovations constitute a "pattern of racketeering activity." Plaintiff argues further that defendants Sarova, Raghvani, and M.D. Contractors fall within the ambit of 18 U.S.C. § 1961(3), which states that " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property." In addition, plaintiff argues, the Tudor Hotel renovations fall within the ambit of 18 U.S.C. § 1961(4), which states that " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

In recommending dismissal of this claim, Magistrate Bernikow properly focussed on the complaint's failure to allege predicate acts sufficient to constitute a "pattern of racketeering activity." Magistrate Bernikow noted, in the first instance, that plaintiff failed to allege in the complaint the use of the mails or wire services, and that such allegations must be made with the particularity required by Rule 9(b), *see McLaughlin*, 962 F.2d at 190–91. In its response papers

to the motion to dismiss, however, plaintiff contends that it is common knowledge that banks use both the mails and the wire services in the payment or return of checks. Magistrate Bernikow observed that even if plaintiff's contention were correct, such use of the mails and the wire services did not contribute to the execution or furtherance of the fraudulent scheme, since mail involving the return of checks for insufficient funds would tend to put plaintiff on notice of the alleged scheme rather than conceal it, and "mailings that serve to put the defrauded party on notice, or make the execution of the fraud less likely, are not covered under section 1341," *United States v. Leyden*, 842 F.2d 1026, 1030 (8th Cir.1988); *see also United States v. Bortnovsky*, 879 F.2d 30, 40 (2d Cir.1989).

Plaintiff objects [6] to Magistrate Bernikow's recommendation that Count One of the complaint be dismissed for failure to allege a "pattern of racketeering activity." Plaintiff argues that the Sarova defendants' use of the mails, by way of checks, facilitated their fraudulent scheme by delaying notification that the checks had bounced. Thus, plaintiff argues, it was the use of the mails that enabled the Sarova defendants to create the false impression that McCormack was being paid, when in fact the checks were not covered by sufficient funds. By reason of the delay in discovering that the checks were "bad," McCormack was induced to make commitments to subcontractors—commitments that McCormack was subsequently unable to cover because the Sarova defendants' checks were ultimately returned for insufficient funds.

Plaintiff cites *United States v. Scott*, 554 F.2d 866 (8th Cir.1977) for the proposition that the use of the mails for the purpose of delay in furtherance of a fraudulent scheme constitutes a violation of 18 U.S.C. § 1341. *Scott* involved a "check kiting" scheme whereby two or more bank accounts are maintained at different banks and checks are regularly drawn on one account and deposited in another. *Cf. United States v. Pick*, 724 F.2d 297 (2d Cir.1983) (describing check kit-

ing scheme). The scheme relies on the delay between the time each check is deposited and the time it is presented for collection. Each account shows credits for uncollected checks: funds may be withdrawn from nonexistent balances by increasing the checks flowing from one bank account to the next in order to maintain the equilibrium between the accounts.

The court in *Scott*, however, distinguished the check kiting scheme in that case from the facts of *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), in which the Supreme Court held that there was no violation of 18 U.S.C. § 1341. In *Maze*, respondent used an unlawfully obtained credit card to pay for lodging at a series of motels in various states. The indictment charged that the delay in mailing the credit card sales slips enabled respondent to continue using the card for an appreciable period of time. *Maze*, 414 U.S. at 397, 94 S.Ct. at 647. The Supreme Court held that respondent's fraudulent scheme reached fruition when he checked out of each hotel, having paid with the unlawfully obtained credit card. *Id.* at 402, 94 S.Ct. at 649–50. The Court noted that the use of the mails did not further respondent's scheme: "Indeed, from his point of view, he probably would have preferred to have the invoices misplaced by the various motel personnel and never mailed at all." *Id.* The Court rejected petitioner's argument that the use of the mails furthered respondent's scheme by reason of the delay involved in mailing the credit card sales slips, observing that "the successful completion of the mailings from the motel owners here to the Louisville bank increased the probability that respondent would be detected and apprehended.... [I]t is the distance, and not the mail service, which causes the time lag in the physical transmission of such correspondence." *Id.* at 403, 94 S.Ct. at 650 (footnotes omitted).

■ The Sarova defendants' alleged scheme is more closely analogous to the fraudulent scheme in *Maze* than the check kiting scheme in *Scott*. Just as the fraudu-

---

**6.** It should be noted that plaintiff failed to file objections to the original Report and Recommendation in a timely manner. In the interest of

thoroughness, however, this Court has reviewed each of plaintiff's objections.

lent acts in *Maze* were completed once respondent had presented the unlawfully obtained credit card for payment for goods and services at the motels, the Sarova defendants' fraudulent acts, as alleged in the complaint, were completed by the presentation to McCormack of each bad check, since it was these acts, and not the subsequent delay in learning that the checks were bad, that created the false impression that McCormack was being paid and induced McCormack to make financial commitments to subcontractors. Indeed, as in *Maze*, the Sarova defendants had no particular interest in whether McCormack's bank mailed or wired the checks to their bank for collection; the alleged scheme would have been just as effective had McCormack's bank misplaced the checks and never mailed them at all. The crux of the alleged scheme was simply the inducement of McCormack to make *commitments* for which McCormack, in turn, was not being paid. This inducement was achieved by the presentation of bad checks, not the subsequent delay in discovering that the checks were bad.

Successful completion of the mailing or wiring of the checks only served to put McCormack on notice that the checks were in fact no good. By contrast, in *Scott*, successful mailing or wiring of each check was essential to the maintenance of the check kiting scheme. In *Scott*, use of the mails and/or the wire services was the means by which each bank was given the false impression that funds were being deposited to an account at that bank: use of the mails and/or wire services was, thus, essential to inducing each bank to credit defendant's account with funds that did not, in fact, exist. *Scott* is, therefore, distinguishable from the instant case. Magistrate Bernikow correctly concluded that mail involving the return of checks for insufficient funds would tend to put McCormack on notice of the alleged scheme rather than conceal it, and therefore does not contribute to the execution or furtherance of the fraudulent scheme.

Count One of the complaint fails to allege a violation of either 18 U.S.C. § 1341 or 18 U.S.C. § 1343, and therefore fails to allege predicate acts constituting a "pattern of rack-

eteering activity." Accordingly, Count One of the complaint is dismissed as to the moving defendants.

### 2. Pattern of Extortion

Count Two of the complaint charges that Sarova, Raghvani, M.D. Contractors, and the Organized Crime Defendants violated 18 U.S.C. § 1962(c) by engaging in a pattern of extortion. As noted above, 18 U.S.C. § 1962(c) states that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." In order to establish a "pattern of racketeering activity," plaintiff must show (1) that the predicate acts are related, and (2) that they amount to or pose a threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989). Defendants argue that plaintiff has failed to allege facts sufficient to meet the second prong of this test: the existence or threat of continuity of the predicate acts.

The *H.J. Inc.* Court defined continuity as follows:

> Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. at 2902. In his Report and Recommendation, Magistrate Bernikow recommended that Count Two be dismissed because plaintiff's allegations failed to establish either closed-ended or open-ended continuity. The complaint alleges that the Sarova defendants

first conspired with Capparelli to force McCormack to withdraw from the Hotel renovation in February 1991, and that on April 12, 1991, plaintiff abandoned the project and ceased all work on the renovations. Thus, the extortionate acts alleged in the complaint occurred over a period of less than three months, and terminated when McCormack abandoned the project on April 12, 1991. Clearly, then, the complaint fails to allege facts sufficient to establish closed-ended continuity, since "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" do not establish closed-ended continuity, *id.*

In its papers filed in response to the motion to dismiss, however, plaintiff argues that the complaint alleges a pattern of extortion characterized by open-ended continuity. Plaintiff argues that this open-ended continuity is established both by the threat of future criminal activity and by the involvement of an organized crime figure. In its objections to the Magistrate Bernikow's Report and Recommendation, plaintiff cites several cases in support of its argument, including *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989) (*en banc*), *vacated and remanded,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 *adhered to,* 893 F.2d 1433 (2d Cir.) (*en banc*), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), in which the Second Circuit held that "a RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; ... acts that are not widely separated in time or space may nonetheless properly be viewed as separate acts of racketeering activity for purposes of establishing a RICO pattern," *id.* at 1391.

■ Magistrate Bernikow correctly observed, however, that while "the nature of the enterprise may ... serve to show the threat of continuing activity," *United States v. Indelicato,* 865 F.2d 1370, 1383 (2d Cir. 1989) (*en banc*), the enterprise identified in the complaint existed solely for the purpose of renovating the Tudor Hotel, and therefore does not of itself reveal the threat of continued racketeering activity. The enterprise identified in the complaint consists of the Sarova defendants, Raghvani, M.D. Contrac-

tors, Capparelli, Service Plus, and OD & P. It is clear from the complaint that the association of these entities was for the sole purpose of renovating the Tudor Hotel. As the *Beauford* court noted, "When, however, there is no indication that the enterprise whose affairs are said to be conducted through racketeering acts is associated with organized crime, the nature of the enterprise does not of itself suggest that racketeering acts will continue, and proof of continuity or the threat of continuity of racketeering activity must thus be found in some factor other than the enterprise itself." *Beauford,* 865 F.2d at 1391. By contrast, in *Indelicato,* another case cited by plaintiff, the enterprise was the "Commission" of La Cosa Nostra.

Indeed, even the extortionate acts alleged in the complaint were themselves directly related to the Tudor Hotel renovations. Since the sole purpose of these alleged acts, as stated in the complaint, was to remove McCormack from the project, once McCormack abandoned the project the threat of continuing criminal activity on the part of the enterprise identified in the complaint ended. By contrast, in *Beauford,* "the amended complaint alleged that on each of several occasions defendants had mailed fraudulent documents to thousands of persons and that there was reason to believe that similarly fraudulent mailings would be made over an additional period of years." *Beauford,* 865 F.2d at 1392. Plaintiff's reliance on *Indelicato* and *Beauford* is misplaced since these two cases are clearly distinguishable from the instant case.

Plaintiff argues that the brevity of the period of time over which the extortionate acts were committed simply attests to Capparelli's effectiveness, and that Magistrate Bernikow's finding that the complaint fails to allege continuity rewards efficient criminal activity. Moreover, plaintiff argues, this pattern of extortion would have continued had McCormack continued to resist Capparelli, and the threat of future criminal activity must exist not at the time the litigation is commenced but rather when the acts are committed, *see Morrow v. Black,* 742 F.Supp. 1199, 1207 n. 20 (E.D.N.Y.1990). The complaint is clear, however, that the Sarova de-

fendant's scheme was designed to remove McCormack from the project only after "most of the work [was] complete." *Complaint,* at ¶ 30. Hence, the alleged scheme was, by the terms of the complaint, finite in duration, and would have ended shortly in any event once the Tudor Hotel renovations were concluded. The complaint fails, therefore, to allege a threat of ongoing criminal activity sufficient to establish open-ended continuity.

■ Plaintiff argues that open-ended continuity is adequately pleaded because of the involvement of a member of organized crime. In *Indelicato,* the Second Circuit stated, "We do not suggest that a defendant's association with an organized crime group is itself an act of racketeering activity.... We simply note that such an association may reveal the threat of continued racketeering activity and thereby help to establish that the defendant's own acts constitute a pattern within the meaning of RICO." *Indelicato,* 865 F.2d at 1384. Applying the *Indelicato* court's reasoning to the instant case, Capparelli's alleged association with the Mafia does not of itself, without more, establish the threat of continued racketeering activity. The enterprise identified in the complaint is not the Bonanno crime family, but rather a conglomeration of persons and entities, of which Capparelli is one, associated for the purpose of renovating the Tudor Hotel.

Certainly, as the *Indelicato* court explained, "Even where the enterprise is legitimate, if the racketeering acts were performed at the behest of an organized crime group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated." *Id.* But according to the complaint, the alleged racketeering acts in the instant case were performed not at the behest of an organized crime group, but rath-

er at the behest of the Sarova defendants. Indeed, it was *plaintiff* who initially hired Capparelli. Plaintiff's argument that Capparelli's purported association with an organized crime family was crucial to the effectiveness of the alleged scheme misses the point, for it fails to demonstrate, or even address, how that association "reveal[s] the threat of *continued* racketeering activity," *id.* (emphasis added).[7]

Because Count Two of the complaint fails to allege facts sufficient to establish continuity, plaintiff has failed to allege a pattern of racketeering activity. Accordingly, Count Two of the complaint is dismissed as to the moving defendants.

### 3. Conspiracy

Count Three of the complaint charges that Sarova, Raghvani, M.D. Contractors, Capparelli, Service Plus, and OD & P violated 18 U.S.C. § 1962(d) by conspiring to conduct or participate, directly or indirectly, in a pattern of activity involving mail and wire fraud, and extortion. 18 U.S.C. § 1962(d) states that "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Since Count One and Count Two of the complaint have been dismissed, however, the conspiracy claim must be dismissed as well. *See Merrill Lynch, Pierce Fenner & Smith, Inc. v. Young,* 1994 WL 88129 at *31, 1994 U.S.Dist. LEXIS 2929, *slip op.* at 103 (S.D.N.Y.1994) ("[S]ince the predicate act allegations against [defendants] have been dismissed for insufficiency of pleading, the conspiracy claim against them must be dismissed as well."); *Kovian v. Fulton County Nat. Bank and Trust Co.,* 647 F.Supp. 830, 839 (N.D.N.Y.1986), *reconsideration denied,* 1990 WL 36809, 1990 U.S.Dist. LEXIS 3526

---

**7.** In a letter addressed to this Court, plaintiff argues that certain evidence presented to a grand jury in connection with an indictment brought against William Capparelli in state court provides additional support for plaintiff's RICO claims. Plaintiff included with its letter a copy of a decision by New York Supreme Court Justice Harold J. Rothwax sustaining the indictment.

The evidence described in Justice Rothwax's decision merely serves, however, to substantiate

the allegations contained in plaintiff's complaint, and fails to provide any new basis for the existence a threat of future criminal activity required in order to show open-ended continuity. Thus, while substantiating the factual allegations contained in the complaint, this additional evidence does not cure the complaint's failure to allege a pattern of racketeering activity as required by RICO.

(N.D.N.Y.1990). Accordingly, Count Three of the complaint is dismissed as to the moving defendants.

### 4. Supplemental State Claims

Since plaintiff's federal claims have been dismissed, and in view of the early stage of this litigation, this Court declines to exercise supplemental jurisdiction over plaintiff's supplemental state law claims. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 32 (2d Cir.1994). Accordingly, plaintiff's state law claims are dismissed as to the moving defendants.

### 5. Leave to Replead

In his Supplemental Report and Recommendation, Magistrate Bernikow recommended that leave to replead be denied on the ground that even if plaintiff were granted leave to amend the complaint, it would be unable to cure the complaint's defects. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Nevertheless, leave to replead may be denied "if the proposed amendments would be futile." *Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987). Having carefully reviewed the complaint, it is clear that the infirmities of the complaint are not of the variety that may be cured by repleading. Accordingly, leave to replead is denied.

### 6. Sanctions

■ One group of moving defendants also brings a motion for the imposition of sanctions. In his Report and Recommendation, Magistrate Bernikow recommended that the motion for the imposition of sanctions be denied on the ground that plaintiff's contentions were not so wholly without merit as to warrant sanctions. Defendants object to this recommendation arguing that Magistrate Bernikow failed to consider the three distinct grounds for the imposition of sanctions outlined in *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338 (2d Cir.1991). Defendants aver that Magistrate Bernikow should have considered sanctions based on (1) Rule 11; (2) 28 U.S.C. § 1927, which states that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct;" and (3) this Court's inherent power. *See id.* at 1344–45. Defendants argue that the complaint, plaintiff's improper motives in drafting the complaint, and plaintiff's memorandum of law in opposition to the motion to dismiss each warrant sanctions.

Having reviewed defendants' various arguments in favor of sanctions, I find that they are without merit. I find that while the complaint is no paragon, its infirmities do not rise to the level of sanctionable conduct under any of the bases set forth above. Likewise, plaintiff's memorandum of law does not warrant sanctions. The remaining contentions regarding plaintiff's allegedly improper conduct do not set forth sufficient grounds for sanctions. Accordingly, the motion for the imposition of sanctions is denied.

### 7. Plaintiff's Motion for a Retroactive Enlargement of the Time for Filing Objections to the Original Report and Recommendation

Plaintiff moves this Court, pursuant to Rule 6(b)(2), for a retroactive enlargement of the time for filing objections to Magistrate Bernikow's original Report and Recommendation. Plaintiff's objections to the original Report and Recommendation were filed after the deadline for objections to that report, but before the deadline for filing objections to the Supplemental Report and Recommendation. Failure to object timely to a Magistrate's report and recommendation operates as a waiver of any further judicial review of the Magistrate's decision. *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989). Plaintiff's counsel argues that his failure timely to file objections was due to excusable neglect. Specifically, plaintiff's counsel states that he was under the mistaken impression that objections to the original Report and Recommendation were to be filed together with objections to the Supplemental Report and Recommendation. Plaintiff's counsel timely filed objections to the Supple-

mental Report and Recommendation, and included plaintiff's objections to the original Report and Recommendation with those objections. Thus, plaintiff's Rule 6(b)(2) motion would have the effect, if granted, of rendering plaintiff's objections to the original Report and Recommendation timely for purposes of appellate review.

Defendants oppose plaintiff's Rule 6(b)(2) motion arguing that the concluding paragraph of the original Report and Recommendation expressly established a deadline for submission of objections, and that plaintiff failed to file timely any objections to that report. Plaintiff's counsel responds that he considered the concluding language of the original Report and Recommendation to be "boilerplate language," and assumed that because Magistrate Bernikow had stated, in the original report, his intention to issue a supplemental report and recommendation, the deadline for submission of objections had been extended until after that report was filed.

Rule 6(b)(2) provides that the Court may "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." The determination of whether neglect is "excusable" in a particular case is within the district court's sound discretion. *Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984); *Supermarkets Gen. Corp. v. Grinnell Corp.,* 490 F.2d 1183, 1186 (2d Cir.1974).

Plaintiff's counsel's assumption that the concluding paragraph of the original Report and Recommendation, which set a clear deadline for filing objections, was mere "boilerplate language" does not fall within the ambit of "excusable neglect." Magistrate Bernikow included in his report all of the language setting forth the deadline and procedures for filing of objections required by the Second Circuit, *see Small,* 892 F.2d at 16, including the caveat, "Failure to object by that date will preclude appellate review." Plaintiff's counsel has not demonstrated reasons sufficient to excuse his failure to observe this clear deadline.

Accordingly, plaintiff's Rule 6(b)(2) motion for a retroactive enlargement of the time for filing objections to the original Report and Recommendation is DENIED.

### CONCLUSION

For the reasons set forth above, this Court adopts Magistrate Bernikow's Report and Recommendation in its entirety. The motions to dismiss the complaint are hereby GRANTED and the complaint is dismissed as to defendants Satinder Vohra, Sunil (Sanjit) Vohra, Sunil Bhasin, Walji Raghvani, William Capparelli, the Sarova Group, Empat Enterprises, Inc., M.R.N. & S., Inc., M.D. Contractors (N.Y.) Corp., and Service Plus Demolition, Inc. The motion for the imposition of sanctions is hereby DENIED.

This Court also adopts Magistrate Bernikow's Supplemental Report and Recommendation in its entirety. Accordingly, leave to replead is hereby DENIED.

Finally, plaintiff's motion for a retroactive enlargement of the time for filing objections to the original Report and Recommendation is hereby DENIED.

SO ORDERED.